IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERNEST MOON, | ) | CASE NO. 1:15 CV 1972 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MICHELLE MILLER, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me[1] is the petition of Ernest Moon for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  In 2013, Moon pled guilty to three counts of rape, three counts of kidnapping, and three counts of gross sexual imposition as part of a plea bargain in the Cuyahoga County Court of Common Pleas and is serving a sentence of sixty years to life.[3] He is currently incarcerated at the Belmont Correctional Institution in St. Clairsville, Ohio.[4]

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Christopher A. Boyko by order dated October 2, 2015. ECF # 3.

[2] ECF # 1.

[3] ECF # 7-2 at 9.

[4] http://www.drc.state.oh.us/OffenderSearch

In his petition, Moon raises three grounds for habeas relief.[5]  The State, in its return of the writ, argues that two grounds should be dismissed as non-cognizable and that the remaining ground is procedurally defaulted.[6]  Moon has filed a traverse.[7]

For the reasons that follow, I will recommend Moon's petition be dismissed in part and denied in part.

## Facts

### A.     Underlying facts, conviction, and sentence

The facts that follow come from the decision of the appeals court.[8]

The underlying incidents giving rise to the charges against Moon occurred in 1999 and involved a child victim.[9] On February 11, 2013, Moon pleaded guilty to three counts of kidnapping, three counts of rape with a sexually violent predator specification, and three counts of gross sexual imposition.[10]  The trial court indicated that the counts for gross sexual imposition would merge into the rape counts.[11]  Moon was advised that the rape counts

---

[5] ECF # 1.

[6] ECF # 7.

[7] ECF # 8.

[8]  Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

[9] ECF #7-2 at 43.

[10] *Id.*

[11] *Id.*

carried life tails on them.[12]  The trial court also informed Moon that he could be subject to consecutive sentences.[13]  Moon indicated that he understood and that he still wished to plead guilty.[14]

At sentencing, the victim (who was now an adult) appeared and gave an impact statement, as did the victim's father.[15]  Moon made a statement in mitigation on his own behalf.[16]  Following these statements, the trial court informed Moon that because he pleaded guilty to a sexually oriented offense and/or child victim offense, he would henceforth be classified as a Tier III sex offender.[17]

Next, the trial court considered the sentencing factors.[18]  The trial court found that Moon had taken away the victim's innocence and destroyed her childhood.[19]  The record further indicated that on a previous occasion, Moon had pleaded guilty to sexual imposition where he had attempted the same plan or scheme with another victim.[20]  The trial court also

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.* at 43-44.

[18] *Id.* at 44.

[19] *Id.*

[20] *Id.*

noted Moon's history in law enforcement had put him in the position of trust and that he betrayed that trust.[21]  According to the trial court, Moon's mitigating statement showed very little remorse for what he done to the victim.[22]  After considering the need to protect the public, Moon's pattern of behavior, and lack of remorse; the trial court determined that the maximum sentence was warranted and that it would be served consecutively, resulting in a sentence of sixty years to life.[23]

## B.    Direct Appeal

### 1.    *Ohio Court of Appeals*

Moon, through counsel, filed a timely[24] notice of appeal[25] with the Ohio Court of Appeals. In his brief, Moon filed one assignment of error:[26]

> 1.    Whether the trial court erred as a matter of law when it failed to make appropriate findings to support consecutive sentences pursuant to R.C. 2929.14(C)(4).

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24]  Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal within 30 days of the judgment being appealed. *See also*, *Smith v. Konteh*, No. 3:04CV7456, 2007 WL 171978, at *2 (N.D. Ohio Jan. 18, 2007).  Moon's conviction and sentence were journalized on March 12, 2013 (*id.* at 9) and the notice of appeal was filed on April 9, 2013. *Id.* at 11.

[25] *Id.* at 11.

[26] *Id.* at 20.

The state filed a brief in response.[27] The Ohio appeals court overruled the assignment of error and affirmed the decision of the trial court.[28]  It does not appear that Moon sought review of this decision by the Supreme Court of Ohio.

a.    *First motion to withdraw guilty plea*

On November 18, 2013, Moon, *pro se*, filed a motion in the trial court to withdraw his guilty plea under Ohio Rule of Criminal Procedure 32.1.[29]  In his motion, Moon asserted that the Maple Heights Police had improperly obtained sealed expungement records, that he was held under excessive bail, and that his defense counsel was ineffective.[30]  The trial court denied Moon's motion to withdraw his guilty plea on December 4, 2013.[31]  Moon filed a response to the trial courts denial on January 2, 2014.[32]  The trial court denied Moon's response that was construed as a motion for reconsideration.[33]

---

[27] *Id.* at 33.

[28] *Id.* at 41.

[29] *Id*. at 49.

[30] *Id*. at 50.

[31] *Id*. at 55.

[32] *Id.* at 56.

[33] *Id*. at 58.

b.      *Motion for delayed appeal of denial of first motion to withdraw guilty plea*

Moon, *pro se*, filed a notice of appeal and a motion to filed a delayed appeal with the

Eighth District Court of Appeals on May 16, 2014.[34]  On that same day, Moon filed his

brief[35] which contained five assignments of error:[36]

1.      U.S. Constitution Privacy Act (1974) and the U.S. Constitution IV Amendment were violated.  Maple Heights, Ohio Police Department illegally obtained sealed Expungement Records, failed to petition court for affirmative by a judge, "Unauthorized Disclosure" as "Expungement record was used to influence indictment" as in illegal search and seizure of (property), criminal, medical, and financial records.

2.      U.S. Constitution VIII Amendment, Article VIII, XI, clearly state when excessive bail ($250,000) is imposed it is illegal.  State denied to reduce bail or give house arrest, no felony convictions, no history of violent behavior to constitute a threat to society, deprivation of society and family, and employment, incarcerated for 14 months due to defendant not plea bargaining, lawmakers rest on presumptions that defendants are innocent until proven guilty and that setting high bail or holding a person in jail before trial is unconstitutional.

3.      Article VIII State's error when basis of evidence in case #55319 is alleged intent with no physical evidence, no D.N.A. Test, no proof of crime was committed back in (1999-2000) by law this constitutes "Speculation" and "Hearsay" grounds for dismissal, "beyond a reasonable doubt does not exist [sic].

4.      Crim. R. 32.1 VIII Amendment March (2013) trial court judge sentenced me to 60 (sixty) years to life in prison.  I was led to believe that "Life Specks [sic]" was removed when I pled guilty.  The trial court abused its discretion refusing to comply with the sentencing

---

[34] *Id*. at 59.

[35] *Id*. at 72.

[36] *Id*. at. 78-80.

guidelines and limits of the plead [sic] bargain.  Thus a "Broken Plea Bargain" is when the trial court refused to acknowledge the removal of life specks [sic] of the sentencing.  Who in the right mind pleas to 60 years to life in prison? See *State v. May* (Medina 1989) 64 Ohio [sic].

5.    The claim of insufficient assistance of counsel will show through by him not objecting to the previous and aforementioned errors, and had he done such in open court the outcome would of been different, but alas without this it fell short of being complete.  Under <u>Crim.R. 30(A)</u> .....The defense attorney failed to properly object or correct such, therefore the party then wavered [sic] all but plain error.

The State did not oppose the motion.  On June 2, 2014, the Court of Appeals denied the motion for delayed appeal.[37]  Again Moon did not seek discretionary review of the decision in the Supreme Court of Ohio.

c.    *Second Motion to withdraw guilty plea*

On July 16, 2014, Moon, *pro se*, filed a second motion to withdraw his guilty pleas under Ohio Rule of Criminal Procedure 32.1 in the Cuyahoga County Court of Common Pleas.[38]  The State filed a response to the motion to withdraw.[39]  Moon filed a reply to the State's response.[40]  The trial court denied Moon's motion to withdraw his guilty plea on August 20, 2014.[41]

---

[37] *Id*. at 87.

[38] *Id*. at 88.

[39] *Id*. at 97.

[40] *Id*. at 103.

[41] *Id*. at 107.

Moon, *pro se*, filed an appeal of the August 20, 2014 judgment.[42]  In his brief, Moon

argued the following assignment of error:

1.      The trial court abused its discretion when it denied the Appellants [sic]
        Motion to Withdraw Guilty Plea Pursuant to Crim. R. 32.1 as untimely
        and "could have been brought up on direct appeal."  Ohio and Federal
        Law and controlling cases show that Appellants [sic] rights were
        violated and the trial courts decision prejudiced him.  Constitutional
        violations.[43]

        Issue Presented: The Appellant will show that the trial courts denial
        based on timeliness when their decision can only have been based on
        timeliness factors stated in the post conviction statutes is in error.  The
        Appellant will show that the trial courts denial based on  "could have
        been brought up on appeal" is flawed for two reasons.  (1) No evidence
        on the record on appeal for the evidence the Appellant submitted; (2)
        this denial of the trial courts can only come from the not-relevant post
        conviction statutes.[44]

The State filed a response brief[45] and Moon filed a reply.[46]  On April 30, 2015, the

Court of Appeals affirmed the judgment of the trial court.[47]

---

[42] *Id*. at 108.

[43] *Id*. at 118.

[44] *Id*.

[45] *Id*. at 134.

[46] *Id*. at 146.

[47] *Id*. at 153.

2.      **The Supreme Court of Ohio**

Moon, *pro se*, thereupon filed a timely[48] notice of appeal with the Ohio Supreme Court.[49] In his memorandum in support of jurisdiction, he raised three propositions of law:[50]

1.      The Court of Appeals abused its discretion and violated due process when it allowed the Appellee to submit reasons for denying the Appellants Motion to Withdraw his Guilty Plea, pursuant to Crim. R.32.1, that were not the reasons submitted by the trial court and thusly, not the reasons and assignments appealed to the court as part of the record on appeal.  Fifth, Sixth, and Fourteenth Amendments of the United States Constitution; Section 16 and Section 5, Article 1, Ohio Constitution.

2.      The trial court abused its discretion when it denied the Appellant's motion to Withdraw Guilty Plea pursuant to Crim. R. 32.1 as "untimely' and "could have been brought up on direct appeal." Fifth, Sixth, and Fourteenth Amendments of the United States Constitution; Section 5 and Section 16, Article I, Ohio Constitution.

3.      The trial court abused its discretion and violated due process when it did not grant Appellants Motion for Withdraw of Guilty Plea pursuant to Crim.R.32.1 and violated his right to be tried by a jury.  Fifth, Sixth, and Fourteenth Amendments of the United States Constitution; Section 5 and Section 16, Article I, Ohio Constitution.

---

[48] *Id.* at 161. *See* Ohio S.Ct.Prac.R. 7.01(A)(5)(b) (To be timely, a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought.); *See*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010) (discussing forty-five day limit) (unreported case). *Id.*  Here, the appellate judgment was entered on April 30, 2015 and the notice of appeal filed in the Supreme Court on May 28, 2015.

[49] *Id.* at 161.

[50] *Id*. at 164.

The State opposed jurisdiction.[51] On August 26, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the appeal under S.Ct.Prac.R. 7.08(B)(4) and dismissed the case.[52]

The record indicates that Moon did not file a writ of certiorari from the Supreme Court of the United States.[53]

## C.    Petition for writ of habeas corpus

On September 24, 2015 , Moon, *pro se*, timely filed[54] a federal petition for habeas relief.[55] As noted above, he raises three grounds for relief:

**GROUND ONE:**

Supporting Facts:    The trial court abused its discretion and violated due process when it did not grant the petitioners Motion for Withdraw of Guilty Plea pursuant to Crim.R.32 (same in Federal as in State) and violated his right to be tried by a jury.  Fifth, Sixth, and Fourteenth Amendments of the United States Constitution; Section 5 and Section 16, Article 1, Ohio Constitution.[56]

---

[51] *Id*. at 188.

[52] *Id*. at 205.

[53] ECF #1 at 2.

[54] The present petition for federal habeas relief was filed on September 24, 2015. ECF # 1. As such, it was filed within one year of the conclusion of Moon's direct appeal in the Ohio courts and so is timely under 28 U.S.C. § 2254(d)(1).

[55] ECF # 1.

[56] *Id*. at 4.

**GROUND TWO**:

Supporting Facts:     The trial court abused its discretion when it denied petitioners Motion to Withdraw Guilty Pleas pursuant to Crim.R.32 as untimely and could have been brought up on direct appeal.  Due process violation.[57]

**GROUND THREE:**

Supporting Facts:     The Court of Appeals abused its discretion and violated due process when it allowed the Appellee to submit reasons for denying the petitioner's appeal that were different from those on the record of appeal.[58]

## Analysis

### A.     Preliminary observations

Before proceeding further, I make the following preliminary observations:

1.     There is no dispute that Moon is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, he meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[59]

2.     There is also no dispute, as detailed above, that this petition was timely filed under the applicable statute.[60]

---

[57] *Id*. at 6.

[58] *Id*. at 7.

[59] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[60] 28 U.S.C. § 2254(d)(1);  *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

3. In addition, Moon states,[61] and my own review of the docket of this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[62]

4. Moreover, subject to the arguments raised by the State, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[63]

5. Finally, Moon has not requested the appointment of counsel,[64] nor has he requested an evidentiary hearing to develop the factual bases of his claims.[65]

## B. Standards of review

### 1. *AEDPA review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[66] codified at 28 U.S.C. § 2254, strictly circumscribes a federal court's ability to grant a writ of habeas corpus.[67]  Pursuant to AEDPA, a federal court shall not grant a habeas petition with respect to any claim adjudicated on the merits in state court unless the state adjudication:

---

[61] *See*, ECF # 1 at 9.

[62] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

[63] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[64] 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.

[65] 28 U.S.C. § 2254(e)(2).

[66] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

[67] *See* 28 U.S.C. § 2254 (2012).

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.[68]

The Supreme Court teaches that this standard for review is indeed both "highly deferential" to state court determinations,[69] and "difficult to meet,"[70] thus, preventing petitioner and federal court alike "from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."[71]

a.    *"Contrary to" or "unreasonable application of" clearly established federal law*

Under § 2254(d)(1), "clearly established Federal law" includes only Supreme Court holdings and does not include dicta.[72]  In this context, there are two ways that a state court decision can be "contrary to" clearly established federal law:[73] (1) in circumstances where the state court applies a rule that contradicts the governing law set forth in a Supreme Court case,[74] or (2) where the state court confronts a set of facts that are materially

---

[68]  28 U.S.C. § 2254(d) (2012).

[69]  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).

[70]  *Id.* (citation omitted).

[71]  *Rencio v. Lett*, 559 U.S. 766, 779 (2010).

[72]  *Howes v. Fields*, 132 S.Ct. 1181, 1187 (2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[73]  *Brumfield v. Cain*, 135 S.Ct. 2269, 2293 (2015).

[74]  *Id.*

-13-

indistinguishable from a Supreme Court decision, but nonetheless arrives at a different result.[75]  A state court's decision does not rise to the level of being "contrary to" clearly established federal law simply because that court did not cite the Supreme Court.[76]  The state court need not even be aware of the relevant Supreme Court precedent, so long as neither its reasoning nor its result contradicts it.[77]  Under the "contrary to" clause, if materially indistinguishable facts confront the state court, and it nevertheless decides the case differently than the Supreme Court has previously, a writ will issue.[78]  When no such Supreme Court holding exists the federal habeas court must deny the petition.

A state court decision constitutes an "unreasonable application" of clearly established federal law when it correctly identifies the governing legal rule, but applies it unreasonably to the facts of the petitioner's case.[79]  Whether the state court unreasonably applied the governing legal principle from a Supreme Court decision turns on whether the state court's application was objectively unreasonable.[80]  A state court's application that is "merely wrong," even in the case of clear error, is insufficient.[81]  To show that a state court decision

---

[75]  *Id.*

[76]  *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam).

[77]  *Id.*

[78]  *See id.*

[79]  *White v. Woodall*, 134 S.Ct. 1697, 1699 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000).

[80]  *Id.*(quoting *Lockyear v. Andrade*, 538 U.S. 63, 75-76. (2003).

[81]  *Id.*

-14-

is an unreasonable application, a petitioner must show that the state court ruling on the claim being presented to the federal court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[82] Under the "unreasonable application" clause, the federal habeas court must grant the writ if the State court adopted the correct governing legal principle from a Supreme Court decision, but unreasonably applied that principle to the facts of the petitioner's case.

b.      *"Unreasonable determination" of the facts.*

The Supreme Court has recognized that § 2254(d)(2) demands that a federal habeas court accord the state trial courts substantial deference:[83]  Under § 2254(e)(1), "a determination of a factual issue made by a [s]tate court shall be presumed to be correct."[84] A federal court may not characterize a state court factual determination as unreasonable "merely because [it] would have reached a different conclusion in the first instance."[85] While such deference to state court determinations does not amount to an "abandonment or abdication of judicial review" or "by definition preclude relief,"[86] it is indeed a difficult standard to meet.  "The role of a federal habeas court is to guard against extreme

---

[82] *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

[83] *Brumfield*, 135 S.Ct. at 2277.

[84] 28 U.S.C. § 2254(e)(1) (2012).

[85] *Brumfield*, 135 S.Ct. at 2277 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010).

[86] *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination.") (internal quotation marks omitted)).

malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determination made on the scene by the trial judges."[87]

## 2.  *Validity of a guilty plea*

A guilty plea is more than a confession that admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment.[88] As such, a plea is a waiver of the right to trial before a judge or jury and, therefore, must be made voluntarily and intelligently,[89] as determined under the totality of the circumstances.[90] The Constitution requires that the totality of the circumstances reflect that the defendant is informed of the direct consequences of the plea.[91] Moreover, a valid plea must be a voluntary and intelligent choice among the alternative courses of action open to the defendant.[92]

In a habeas proceeding, the State bears the burden of showing the petitioner's plea was valid and usually does so by producing a transcript of the plea hearing.[93]  Although no exact recital of waived rights is required, the record should reflect a full understanding of the

---

[87] *Davis v. Ayala*, 135 S.Ct. 2187, 2202 (2015) (citation omitted).

[88] *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

[89] *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

[90] *Brady v. United States*, 397 U.S. 742, 749 (1970).

[91] *Id*. at 755.

[92] *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

[93] *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

direct consequences of the plea, so that it is clear that the plea represents a voluntary and intelligent choice among the alternatives.[94]  The court will not presume a valid waiver from a silent record.[95]

Because a valid plea is a solemn declaration of guilt by the defendant, it carries a presumption of truthfulness.[96]  In addition, having entered a valid plea, the defendant may not then challenge antecedent non-jurisdictional defects in the proceedings.[97] As the Supreme Court teaches, this is because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process."[98] Thus, as the Sixth Circuit has reaffirmed, "after the entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself."[99]

### 3.    *Noncognizable claims*

The federal habeas statute, by its own terms, restricts the writ to state prisoners in custody in violation of federal law.[100] Accordingly, to the extent a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which

---

[94] *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

[95] *Boykin*, 395 U.S. at 243.

[96] *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

[97] *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973).

[98] *Id*. at 267.

[99] *Werth v. Bell*, 692 F.3d 486, 495 (2012).

[100] 28 U.S.C. § 2254(a).

federal habeas relief may be granted.[101] In such circumstances, a claim for federal habeas relief based solely on the ground of purported violation of state law is properly dismissed by the federal habeas court as non-cognizable.[102]

But a claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the denial of "fundamental fairness" at trial.[103] The Supreme Court has made clear that it defines "very narrowly" the category of infractions that violate the "fundamental fairness"of a trial.[104] Specifically, such violations are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[105]

The petitioner bears the burden of showing a violation of a principle of fundamental fairness.[106] In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law[107] and may not second-guess a state court's interpretation of its own procedural rules.[108]  Further, while in general distinct constitutional claims of trial

---

[101] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[102] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

[103] *Estelle*, 502 U.S. at 67-68.

[104] *Bey*, 500 F.3d at 522, quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[105] *Id.* at 521, quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[106] *Id.*

[107] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[108] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

error may not be cumulated to grant habeas relief,[109] the Sixth Circuit has recognized that "'[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'"[110]

## C.    Application of standards

### 1.    *Validity of the guilty plea*

As Moon does not dispute, he pleaded guilty to all charges after being informed that he could be subject to consecutive sentences.  Moreover, as set forth in the traverse, Moon essentially concedes that he understood from the trial judge the full sentencing consequences of his guilty plea during the plea colloquy, but nevertheless tendered his plea believing that a particular sentence would be given to him in accord with what was allegedly promised him as the result of a plea deal: "Yes, there was the plea colloquy where the Judge said what he could do. That doesn't mean that Moon was not expecting what was promised if he changed his plea."[111]

As such, Moon argues that the plea entered in open court at the plea colloquy, the content of which colloquy he concedes he understood, was nonetheless not "knowingly

---

[109] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

[110] *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983).

[111] ECF # 8 at 6.

made" because he based his acceptance of the plea "on a plea deal that his counsel offered him"that was not discussed in court during the plea colloquy.[112]

In applying the clearly established federal law as to the validity of guilty pleas to Moon's claims,  Moon acknowledges that he participated in a plea colloquy where the sentencing judge informed Moon of the consequences of pleading guilty. By his own admission, Moon was fully aware of those possible consequences but claims to have expected a specific outcome as a result of conversations with his counsel.

Yet, the plea transcript details that the trial court individually reviewed, on the record in open court, how each count of the indictment would be effected by the proposed plea, noting that sexually violent predator, sexual motivation, and/or submission by force specifications would be removed from all charges except counts 2, 5 and 8 (thus decreasing the potential sentence), and that sentencing on the gross sexual imposition charges in counts 3, 6 and 9 would merge with the sentence for the rape charges in counts 2, 5 and 8, thus having the effect again of reducing the total possible sentence.[113]  The sentencing court then observed on the record that the agreement was the result of "extensive negotiations" between the prosecution and the defense,[114] and defense counsel assured the court that he had

---

[112] *Id.*

[113] ECF # 7, Attachment 3 (plea hearing) at 5-9. I note here that if Moon would succeed in invalidating the plea in this case, he would no longer receive any benefits from that plea, including the removal of certain specifications, which had the effect of reducing the possible prison terms.

[114] *Id.* at 10.

reviewed with Moon "the plea, the potential penalties and the Constitutional and statutory rights he would be giving up ...."[115]

The trial court then had an on the record discussion with Moon wherein Moon explicitly denied that anyone had made any promises to him, apart from the recited plea deal, to induce his plea, and wherein Moon told the court that he was satisfied with his counsel's representation.[116]

The trial court thereupon went over with Moon each count of the indictment, detailing once more how it would be effected by the terms of the plea, emphasizing to Moon "I just want to be sure that you fully understand what you are doing before we make this a final act."[117]  At the conclusion of the judge's review of how the plea would effect each count, the court specifically stated the precise penalties that could be imposed for each count after the plea was accepted, taking care after each count to ask Moon if he understood.[118]  The court then reviewed the aspects of post-release control,[119] of parole[120] and of registering as a sex offender, court costs and avoiding contact with the victim.[121]  The court then had the

---

[115] Id.

[116] Id. at 12.

[117] Id.

[118] Id. at 13 (count one); 13-14 (count two); 14-15 (count three); 15 (counts four and five); 15-16 (count six); 16 (counts seven and eight); and 16-17 (count nine).

[119] Id. at 17-18.

[120] Id. at 18.

[121] Id. at 18-19.

prosecutor and defense counsel each state on the record that the terms of the plea agreement as stated by the court were the same as what were "relayed ... to the defendant."[122]

The court then reviewed with Moon the rights he would relinquish by pleading guilty.[123]  At the conclusion of that review, the sentencing judge asked Moon if he had any questions, and Moon responded that he had none.[124]  The court then took Moon's plea as to each count of the indictment, as modified by the terms of the agreement.[125]

Within that exchange, however, the court had the following discussion with Moon as to how the merger for sentencing purposes of the rape and gross sexual imposition charges could work:

> THE COURT: I'm going to stop right here because there is one element that I did not go over that I want to make sure that you understand fully.  The Court of Appeals in this state have universally agreed that I do not have to give you the maximum possible penalty or inform you what the maximum possible penalty is but we heard a discussion about how the GSI counts are going to merge into rape counts.  You understand that, correct?
>
> DEFENDANT: Yes.
>
> THE COURT: There is no agreement, nor am I bound to run all of these sentences concurrent to each other, which means I could issue these sentences consecutive to each other.  Do you understand that?

---

[122] *Id.* at 20.

[123] *Id.* at 20-22.

[124] *Id.* at 22.

[125] *Id.* at 22-26.

-22-

DEFENDANT:     Yes.

THE COURT:     I'm not saying that I'm going to.  I have to make findings
               under House Bill 86 in order to do that, but I want to
               make sure you're aware that if I wanted to, I could run
               three to ten, three to ten, consecutive back to back.   Do
               you understand that?

DEFENDANT:     Yes.

THE COURT:     Does that affect in any way the pleas you made on the
               first five counts so far?

DEFENDANT:     No.[126]

Finally, after securing the agreement from both counsel that the plea colloquy had

conformed with the mandates of Ohio Criminal Rule 11,[127] and at the conclusion of the plea

colloquy, the Moon's counsel stressed that although they had been prepared for trial, they

were aware that if they were not successful, the outcome could have been a life sentence

without the possibility of parole.[128]  That prompted the following response from the court:

COURT:         * * * Mr. Moon, for the record, your attorney and the
               State of Ohio have worked very hard on this to reach this
               resolution, and although you may not realize it now
               based upon the numbers that I just read to you, your
               exposure has been dramatically reduced by the
               agreements worked out, and there is a possibility of you
               one day walking out of prison, okay? It's not guaranteed,
               but the way it was originally indicted, you would of died
               in prison without ever seeing the parole board, okay?

---

[126] *Id.* at 23-24.

[127] *Id.* at 27.

[128] *Id.* at 28.

-23-

DEFENDANT:       Yes.[129]

On this record, the plea colloquy establishes that under the totality of the circumstances Moon made his plea voluntarily and intelligently, with understanding of the direct consequences of that plea.[130]  Moreover, the Ohio appeals court decision that affirmed the trial court's denial of Moon's second motion to withdraw his plea also reviewed the specific features of the plea colloquy and concluded that the prosecutor had never mentioned an agreed-upon sentence when he recounted the terms of the plea to the court; defense counsel did not object to the terms as outline by the prosecutor; and "[m]ost importantly, Moon himself agreed on the record that there was no agreement [as to sentencing]."[131]

Accordingly, the Ohio appeals court decision is not contrary to the clearly established federal law as set forth above.  Thus, to the degree that Moon here challenges the validity of his plea as not voluntary or intelligent,  Ground One should be denied on the merits.

## 2.    *Non-cognizability*

To the extent Moon here does not directly attack the validity of the plea itself but seeks federal habeas relief on the grounds that Ohio violated due process – in denying the motion itself,  in finding the motion to withdraw the plea to be untimely, and/or in permitting the State to raise issues in its appellate brief that were not before the trial court when it

---

[129] *Id.* at 28-29.

[130] *Brady*, 397 U.S. at 749, 755.

[131] ECF # 7, Attachment (state court record/ appellate court opinion) at 159.

-24-

denied the original motion[132]– such arguments are non-cognizable.  As was observed by the

federal habeas court in *Gibson v. Hocking Correctional Facility:*[133]

> A state defendant has no federal constitutional right, or absolute right under state law, to withdraw a guilty plea.  See e.g., *Dickey v. Warden, Lebanon Corr. Inst.*, No.1:08cv819, 2010 WL 92510, at *1, *8 (S.D. Ohio Jan.6, 2010) (Beckwith, J.; Black, M.J.) (and numerous cases cited therein); see also *Cline v. Kelly*, No.1:09cv859, 2010 WL 1006529, at *5 & n.7 (N.D.Ohio Mar.16, 2010)(citing *United States v. Woods*, 554 F.3d 611, 613 (6th Cir.2009); *Xie v. Edwards*, No.93-4385, 1994 WL 462143, at *2 (6th Cir. Aug.25, 1994)).  Instead, "the decision whether to permit a defendant to withdraw a guilty plea is committed to the trial court's discretion, which generally is not a basis for federal habeas relief." *Dickey, supra*, 2010 WL 92510, at *8 (citing United States ex rel. *Scott v. Mancusi*, 429 F.2d 104, 109-10 (2nd Cir.1970), *cert. denied*. 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed. 2d 651 (1971)); *cf. Cline, supra*, 2010 WL 1006529, at *5 (finding that the magistrate judge had "correctly concluded" that "whether a state court grants a motion to withdraw a guilty plea is a matter of state law not cognizable on federal habeas review").

> *Dickey* is factually analogous to the case-at-hand.  In that case, as in the instant case, the petitioner filed a motion to withdraw his guilty plea over two years after he entered the plea.  The *Dickey* court held that the petitioner was "unable to prevail on any claim that the trial court's denial of his May 2006 motion to withdraw his January 2004 guilty plea, of itself amounted to a violation of the federal Constitution." *Dickey, supra*, 2010 WL 92510, at *8.  In so ruling, the court relied on a Sixth Circuit decision, holding "that the district court erred in granting habeas corpus relief to a petitioner who claimed that the trial court's abuse of discretion in refusing to permit him to withdraw his jury trial waiver, was, of itself, a violation of the Sixth

---

[132] ECF # 1 at 4-5 (Ground One); 6 (Ground Two); and 8 (Ground Three).

[133] Gibson v. Hocking Correctional Facility, No.1:10CV8,  2011 WL 1429099 (S.D. Ohio Feb. 23, 2011).

Amendment." *id*. (citing *Sinistaj v. Burt*, 66 F.3d 804, 807-08 (6th Cir. 1995)).  The *Dickey* court concluded that the following reasoning, quoted from *Sinistaj*, 66 F.3d at 808 (emphasis in the original), also applied to the petitioner's claim challenging the denial of his post-sentence motion to withdraw his guilty plea:

> It is possible, of course, at least in theory, that a state court's refusal to permit a defendant to withdraw a previously filed jury trial waiver could amount to an unconstitutional denial of the defendant's Sixth Amendment right to a jury trial. But we can conceive of no situation in which a federal judicial determination on habeas collateral review that a state court, as a matter of general law, abused its discretion in denying the withdrawal motion is *therefore* a violation of the federal constitution.

Similarly here, the Court is persuaded to the extent that the petitioner challenges the trial court's denial of his April 2009 motion to withdraw his January 2007 guilty plea, his claim is not subject to review in this federal habeas proceeding.[134]

For the reasons stated in *Gibson*, and delineated above, the Court should dismiss as non-cognizable all elements of the present petition alleging a violation of due process in connection with the Ohio court's denial of Moon's motion to withdraw his plea.

## Conclusion

For the reasons stated above, I recommend that the petition of Ernest L. Moon for habeas relief be dismissed in part and denied in part.

Dated: December 20, 2016                    s/ William H. Baughman, Jr.
                                            United States Magistrate Judge

---

[134] *Id*. at *6.

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[135]

---

[135] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).